**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:22-cv-01114-AMD-TAM |
| | : | |
| PIETRO MANETTA, | : | |
| | : | |
| Defendant. | : | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………………………… ii

I.    NATURE OF THIS CASE…………………………………………………………….. 1

II.   FACTS…………………………………………………………………………………… 2

III.  DAMAGES……………………………………………………………………………… 4

   A.  Introduction…………………………………………………………………………… 4

   B.  Damages under § 605(e)(3)(C)(i)(II)……………………………………………….. 5

   C.  Damages for Willful Act under § 605(e)(3)(C)(ii)………………………………… 8

   D.  Damages Summary……………………………………………………………………… 10

   E.  Individual Liability under Title 47 U.S.C. § 605………………………………… 13

IV.   CONCLUSION………………………………………………………………………… 14

# TABLE OF AUTHORITIES

<u>Statutes</u>

47 U.S.C. § 553 …………………………………………………………………………... 1, 2, 4

47 U.S.C. § 605 ……………………………………………………………………….. 1, 2, 4-14


<u>Rules</u>

Fed. R. Civ. P. 55(b)(2) …………………………………………………………………... 1


<u>Cases</u>

*Arista Records, Inc. v. Flea World, Inc.*, 2006 WL 842883, at \*9 (D.N.J. 2006)……………13-14

*Cable/Home Communications Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990)……………………………………………………………………………………………5

*Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 113 (E.D.N.Y. 1997)………6

*Cimenelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984)……………………………….4

*Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 WL 2063819, at \*4 (S.D.N.Y. 2005)……14

*Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)…………1

*F.W. WoolWorth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952)…………………………. 6

*Fallici v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983)………………12

*G&G Closed Cir. Events, LLC v. Vasquez*, 2020 WL 8167387, at \*4 (E.D.N.Y. Dec. 27, 2020), *report and recommendation adopted*, 2021 WL 135721 (E.D.N.Y. Jan. 14, 2021)…………12-13

*Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d Cir. 1996)……………………………… 4

*J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 659 (E.D.N.Y. 2019)…13,14

*J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 677 (D.S.C. 2011)…12

*J & J Sports, Prods. Inc. v. Castrillion*, 2009 WL 1033364, at \*3 (E.D.N.Y. Apr. 16, 2009)…11,12

*J & J Sports Prods., Inc. v. Gencarelli*, 2012 WL 4442514, at \*1 (D.N.J. Sept. 21, 2012)………11

*J & J Sports Prods., Inc. v. Martinez*, 2014 WL 5410199, at *8 (E.D. Pa. Oct. 23, 2014)………11

*J & J Sports Productions, Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008)………….13

*J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 707 (W.D.N.C. 2012)…………… 11

*J & J Sports Prods., Inc. v. Sugar Café Inc.*, 2018 WL 324266, at *2 (S.D.N.Y. Jan. 5, 2018)……………………………………………………………………………….10-11

*Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 759 (S.D. Tex. 2014)……….14

*Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, 2011 WL 4102314 at *5 (M.D. Ga. 2011)…...8-9

*Joe Hand Promotions, Inc. v. Benitez*, 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020)…………………………………………..8

*Joe Hand Promotions, Inc. v. Bernal*, 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019)………13

*Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, at *4 (E.D. Cal. Jan. 10, 2011)……11-12

*Joe Hand Promotions, Inc. v. Moore*, 2017 WL 741009, at *3 (W.D. Ark. Feb. 24, 2017)…….. 11

*Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *8 (D.N.J. March 13, 2013)……11

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981)….. 6

*On/TV of Chicago v. Julien*, 763 F. 2d 839, 845 (7th Cir. 1985)…………………………….. 6

*Teri Woods Publ'g, L.L.C. v. Williams*, 2013 WL 6179182, at *3 (E.D. Pa. Nov. 25, 2013)…….12

*Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)….8

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-127 (1985)………………………….. 8

Secondary Sources

Wright, Miller & Kane, Federal Practice and Procedure, 10A Fed. Prac. & Proc. Civ. § 2684 (3d ed.) …………………………………………………………………………………. 1

## I.  NATURE OF THIS CASE

On March 2, 2022, Plaintiff Joe Hand Promotions, Inc., (hereinafter "Plaintiff" or "JHP") filed its Complaint against Defendants Triangle Eatery, LLC and Pietro Manetta, complaining of their unauthorized and illegal receipt and exhibition of the *Ultimate Fighting Championship® 235: Jon Jones vs. Anthony Smith* broadcast, including all undercard bouts and commentary, on March 2, 2019 (hereinafter "Event") at M.I.A. Made in Astoria (hereinafter "Establishment"), a commercial business, without paying the sublicense fee to Plaintiff.  Plaintiff has dismissed Triangle Eatery, LLC and now proceeds solely against Defendant Pietro Manetta (hereinafter "Defendant").  Plaintiff served the Summons and Complaint upon Defendant Pietro Manetta on May 31, 2022.  *See* Doc. Nos. 5.  To date, the Defendant has failed to appear or otherwise file a pleading responsive to Plaintiff's Complaint within the time prescribed by the Federal Rules of Civil Procedure.  The lawsuit charged the Defendant with a violation of Section 705 of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605.  Upon the failure of the Defendant to timely file a responsive pleading, Plaintiff filed a Request for Certificate of Default against the Defendant on July 14, 2022.  *See* Doc. No. 7.  On July 21, 2022, default was entered against Defendant.  *See* Doc. No. 8.  Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, a default judgment is appropriate.

Once a default judgment is entered, "it generally is treated as a conclusive and final adjudication of the issues necessary to justify the relief awarded and is given the same effect as between the parties as a judgment rendered after a trial on the merits." Wright, Miller & Kane, Federal Practice and Procedure, 10A Fed. Prac. & Proc. Civ. § 2684 (3d ed.).  Due to Defendant's default, the Plaintiff's well pleaded allegations of fact are deemed admitted.  *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).  As such, the only issue remaining

1

to be decided in this case is the amount of damages to which Plaintiff is entitled from the Defendant as a result of their violation of the Statute.

## II. FACTS

Plaintiff is a distributor of sports and entertainment programming to commercial establishments (i.e., bars, restaurants, nightclubs, lounges, etc.).  Plaintiff entered into an agreement with the promoter of the Event, providing Plaintiff with the exclusive right to license the exhibition of the Event to commercial establishments such as Defendant's Establishment. Defendant is the owner and/or operator of M.I.A. Made in Astoria, a commercial establishment located at 27-35 21st Street, Astoria, NY 11102.  On March 2, 2019, without authorization, the Defendant or agents, servants and/or employees of the Defendant, intercepted and received or assisted in the interception and receipt of the transmission of the Event.  They thereupon broadcasted or assisted in the broadcast of the Event to the patrons of the Establishment.

After Plaintiff's informal attempts to resolve this matter failed, Plaintiff initiated the instant action on March 2, 2022 alleging among other things, that the Defendant knowingly and willfully violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605.  The Complaint alleges that the Defendant unlawfully intercepted and exhibited the Event on March 2, 2019.

Plaintiff served the Summons and Complaint upon Defendant Pietro Manetta on May 31, 2022. *See* Doc. No. 5.  As Plaintiff alleges in both the Complaint and accompanying affidavit (attached hereto as "Affidavit of Joseph P. Hand, III"), Plaintiff owns, and at all relevant times did own, the exclusive commercial distribution rights in and to the Event.  A true and correct copy of the relevant Commercial Licensing Agreement is attached hereto as "Commercial Licensing Agreement."  For a fee, commercial establishments can purchase the right to exhibit certain programming from Plaintiff.  The fee is calculated based on the occupancy of the commercial

establishment.  A true and correct copy of the Rate Card for the Event is attached hereto as "Rate Card."

In the State of New York, the Event was legally available to the public only through very limited means.  A commercial establishment, such as a bar, restaurant or lounge, could receive and broadcast the Event only after entering into a contractual agreement with Plaintiff.  A residential cable subscriber could only obtain the Event by purchasing it for $64.99 through the subscriber's residential pay-per-view cable system or UFC.TV.  *See* Steven Muehlhausen, *UFC 235: Jon Jones vs. Anthony Smith fight date, PPV price, live stream, full card*, THE SPORTING NEWS, https://www.sportingnews.com/us/mma/news/ufc-235-jon-jones-vs-anthony-smith-fight-time-ppv-price-live-stream-full-card/1sjgxqswokb8a1r2ws171mv72u.

The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for the use of the general public.  If a commercial establishment was authorized by Plaintiff to receive the Event, it was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal.  The authorized commercial establishments which contracted with Plaintiff were required to pay to Plaintiff a sublicense fee.

Despite these safeguards, through untoward methods, requiring an affirmative, deliberative and willful act, commercial establishments that would otherwise be required to purchase the programming from Plaintiff, illegally obtain said programming without paying Plaintiff.  In an effort to combat the aforementioned activity, Plaintiff engages in investigations to identify and investigate establishments that are publicly exhibiting the Plaintiff's programming without proper authorization from, or payment to, Plaintiff.  Prior to the Event, Defendant did not receive authorization from, nor make payment to, Plaintiff to exhibit the Event at the Establishment.

On the night of the Event, auditor Gary Joseph, visited the Establishment and observed the Event being broadcasted to the patrons of the Establishment.  A copy of Gary Joseph's Affidavit is attached hereto as "Affidavit of Gary Joseph."  Upon entering Mr. Joseph noted that the Establishment had an approximate capacity of seventy-five (75) people with approximately forty (40) patrons present watching the Event.  *See* Affidavit of Gary Joseph.  As Plaintiff maintained proprietary rights in the signal of the Event, all unlawful acts of interception, receipt and broadcast of the signal by the Defendant was in violation of Plaintiff's rights and caused Plaintiff to suffer damages.

After proper service of the aforementioned Complaint, the Defendant did not file an Answer or other responsive pleading.  Upon the failure of the Defendant to timely file a responsive pleading, Plaintiff filed a Request for Certificate of Default against the Defendant on July 14, 2022.  *See* Doc. No. 7.  On July 21, 2022, default was entered.  *See* Doc. No. 8.  Plaintiff now seeks full and final judgment against Defendant.

## III. DAMAGES

### A. Introduction

Plaintiff, Joe Hand Promotions, Inc. is an aggrieved party under Title 47 U.S.C. §§ 553 and 605 because it had a proprietary interest in the intercepted communications (i.e. the Event).  Sections 553 and 605 protect companies such as the Plaintiff against the theft of proprietary communications like the underlying Event in this action.  *Cimenelli v. Cablevision*, 583 F. Supp. 158, 161 (E.D.N.Y. 1984).  When a defendant is liable under both §§ 553 and 605, an aggrieved plaintiff may recover damages under only one section.  *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 127 (2d Cir. 1996).  Plaintiff elects for damages pursuant to 47 U.S.C. § 605.  Under 47 U.S.C. § 605, Plaintiff may recover statutory damages of up to $10,000.00 for each violation

4

thereof.   §   605(e)(3)(C)(i)(II).    Moreover, if the court finds that the violation of the Communications Act was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain...," the court may award additional damages of up to $100,000.00.  47 U.S.C. § 605(e)(3)(C)(ii).  Furthermore, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), a court shall award full costs, including reasonable attorneys' fees.

As M.I.A. Made in Astoria is a commercial establishment, it could not have obtained the transmission of the Event had the Defendant not undertaken specific wrongful actions to intercept and/or receive and broadcast the Event.  In order for an unauthorized commercial establishment to receive a broadcast such as the Event, there must be some wrongful action to bring the signal of the Event into the commercial establishment.

**B.  Damages under § 605(e)(3)(C)(i)(II)**

As its first basis for relief, Plaintiff is requesting statutory damages in the amount of $2,000. § 605(e)(3)(C)(i)(II).  *See Cable/Home Communications Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ("Both the copyright and communications statutes allow the aggrieved party to elect either actual or statutory damages.").

As stated earlier, on the night of the Event, Defendant, or their agents, servants and/or employees intercepted and received or assisted in the interception and receipt of the live telecast of the Event to patrons at the Establishment for viewing therein. The patrons at the Establishment purchased meals and/or drinks while viewing the Event.  The patrons whom Defendant permitted without authorization to view the Event would otherwise only have been able to view the Event at a commercial establishment authorized by Plaintiff to receive the transmission.  The Defendant broadcasted the Event to the patrons at the Establishment without paying any sublicense fees to Plaintiff.  To date, no amount has been paid to Plaintiff to compensate it for the illegal broadcast

5

of the Event in the Establishment and there has been no attempt by Defendant to reach a settlement. Statutory damages are appropriate where actual damages are difficult to prove. *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981). The Supreme Court has held that the absence of adequate proof of any particular element causes the court to rely, within its discretion, on the statutory limitation. *F.W. WoolWorth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).

In the instant matter, it would be impossible to determine the full extent of profits lost by Plaintiff, loss of goodwill and the additional damages sustained by Plaintiff as a result of Defendant's unlawful actions. Furthermore, in exercising such discretion, the court should be mindful of the difficulty in detecting such violations and the widespread problem of piracy; as such the Court should grant damages in an amount which achieves the deterrent purposes of the statute. *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 113 (E.D.N.Y. 1997). The unauthorized interception, receipt and broadcast of the Event and other closed-circuit programming threaten the viability of the closed-circuit industry. There are no countervailing social or policy considerations which justify the unauthorized interception of these broadcasts. *On/TV of Chicago v. Julien*, 763 F. 2d 839, 845 (7th Cir. 1985).

In addition to the lost revenue Plaintiff should have received from selling the sublicense to the Defendant, Plaintiff should receive additional compensation to account for any profits gained by Defendant from the increased proceeds coming from the sale of drinks and/or meals sold to patrons as an indirect result of their unlawful actions. Moreover, as a result of theft by Defendant, Plaintiff has lost and will continue to lose as customers legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as Defendant's, who steal programming that Plaintiff provides. Patrons, who

visited Defendant's Establishment to see the Event, are patrons who did not go to authorized commercial establishments and spend their money at places that legally obtained the authorization to show the event. Those authorized commercial establishments cannot compete with the unfair and illegal competitive advantage that unauthorized establishments, like the Defendant's, unlawfully enjoy. Therefore, authorized commercial establishments will be less likely to legally obtain the broadcast of future events that Plaintiff provides if illegal acts like the ones Defendant has committed are met with insignificant financial penalties. Plaintiff pays very substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges authorized commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Event. Illegal broadcasts of Plaintiff's programs such as the Event erode the base of Plaintiff customers and severely damage Plaintiff's ability to pay for the fees to obtain the right to sublicense future closed-circuit sports and entertainment programming.

Finally, Plaintiff has suffered damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission of the Event. When negotiating sublicense fees, Plaintiff generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming. Therefore, when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such as the Event, Plaintiff's reputation and goodwill suffers from what appears like a misrepresentation.

Given the illegal benefits from the broadcast of the Event and given the additional damages which Plaintiff has suffered, it is fair and reasonable to assess against Defendant and award to

7

Plaintiff statutory damages in the amount of $2,000 pursuant to § 605(e)(3)(C)(i)(II), equal to the legal licensing fee ($980) plus a modest estimate of profits realized by Defendant from the unauthorized broadcast ($1,020).

**C. Damages for Willful Act under § 605(e)(3)(C)(ii)**

In addition to the damages set forth in § 605(e)(3)(C)(i)(II), § 605(e)(3)(C)(ii) grants the court discretion to award up to $100,000 in enhanced statutory damages per violation where the court determines that the violation was willful and committed for the direct or indirect commercial advantage or private financial gain. The Supreme Court has defined "willful" as "marked by careless disregard for whether or not one has the right so to act." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126-127 (1985). By virtue of default, Defendant has admitted that the illegal broadcast of the Event was willful and committed for the direct or indirect commercial advantage or private financial gain. Even absent the Defendants' admissions, courts have generally held that the interception of an encrypted pay-per-view program for broadcast in a commercial establishment that is open to the public is willful and for financial advantage. *See Joe Hand Promotions, Inc. v. Benitez*, 2020 WL 5519200, at *6 (E.D.N.Y. Aug. 27, 2020) ("Willfulness can be established merely by the broadcast of an event without authorization."), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *Time Warner Cable v. Googies Luncheonette, Inc.,* 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). A court faced with a motion for default judgment with factually similar circumstances, found that "it is difficult for this Court to see how Defendants could have accidentally intercepted and exhibited the encrypted Program; the signal had to be unscrambled

8

by some deliberate act…. Therefore, the Court finds that Defendants' broadcast of the Program without Plaintiff's authorization is enough to show a willful violation committed for the purpose of direct or indirect financial gain." *Joe Hand Promotions, Inc. v. ADJ Entity, LLC*, 2011 WL 4102314, at *5 (M.D. Ga. 2011).

As set forth herein*,* because of the absence of any way in which the Defendant could have "innocently" accessed the broadcast of the Event, it is apparent that they specifically and willfully acted to illegally intercept the transmissions of the Event for their own commercial advantage. Additionally, the unauthorized broadcast of the Event at the Establishment was advertised on Facebook. *See* Declaration of Jon D. Jekielek, Exhibit B. Clearly, the Defendant's actions indicate disregard of and indifference to the Statute. The Defendant knew that it was wrong to receive, intercept and broadcast the Event and to broadcast it in the Establishment. Further, the Defendant knew that their actions were unlawful, yet, with total disregard for the Statute, they nevertheless intercepted and received the transmission and broadcast it to the patrons of the Establishment.

Similarly, by virtue of default, Defendant has admitted that the illegal broadcast of the Event was committed for the direct or indirect commercial advantage or private financial gain. In all likelihood, one of the main reasons Defendant showed the Event at their commercial establishment was to realize profits from the sale of food and beverages from paying patrons who came to watch the unauthorized broadcast of the Event. Without paying the sublicense fee, Defendant was able to broadcast the Event to their patrons for free and enjoy the proceeds from the evening of the Event without paying a financial investment.

Not paying the sublicense fee and illegally pirating the event saved the Defendant from having to pay the fee that Plaintiff charged for the Event that is based on the occupancy of the commercial establishment. By not paying the requisite fee, before the Event even began,

Defendant saw a profit of at least $980 (*see* Rate Card) over all of their legitimate competitors of similar size who did pay the sublicense fee.  Additionally, the Defendant realized increased proceeds that came from sales to patrons buying food and/or drinks that came to the Establishment on March 2, 2019 to view the Event.  This is also Defendant's second lawsuit for the illegal broadcast of Plaintiff's pay-per-view programming and third lawsuit overall for illegally broadcasting pay-per-view programming, and hence the need for further deterrence is high.  *See Joe Hand Promotions, Inc. v. Manetta*, C.A. No. 1:19-cv-04232, Doc. No. 1 (E.D.N.Y. July 23, 2019); *Innovative Sports Management Inc. v. Triangle Eatery & Bar, LLC*, C.A. No. 1:21-cv-06909, Doc. No. 1 (E.D.N.Y. Dec. 15, 2021).

Accordingly, the legitimate establishments suffer financial losses at the hands of pirates and are forced to either cease the legitimate purchase of programming from the Plaintiff and rights holder or begin to pirate programs like the one in the instant matter. The erosion of Plaintiff's legitimate customer base caused by signal piracy has and continues to adversely affect Plaintiff's ability to survive in the business. While unauthorized establishments continue to receive direct or indirect commercial advantage or private financial gain.

Because the Defendant's actions were willful and committed for the direct or indirect commercial advantage or private financial gain, Plaintiff is entitled to enhanced damages, at the court's discretion, up to $100,000. § 605(e)(3)(C)(ii). Plaintiff respectfully requests enhanced damages in the amount of $8,000.

### D.  Damages Summary

Plaintiff believes damages in the amounts of $2,000 under § 605(e)(3)(C)(i)(II) and $8,000 under § 605(e)(3)(C)(ii) would adequately compensate Plaintiff for its damages, penalize Defendant for their illegal conduct, and uphold the statutory intent of deterrence. *See J & J Sports*

10

*Prods., Inc. v. Sugar Café Inc.*, 2018 WL 324266, at *2 (S.D.N.Y. Jan. 5, 2018) ("An award of enhanced damages ensures that a willful defendant's profits are disgorged and aims to deter similar acts of cable piracy in the future." (internal citations omitted)); *see also J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 707 (W.D.N.C. 2012) ("The primary purpose behind [enhanced damages] is to deter future violations."); *J & J Sports Prods., Inc. v. Martinez*, 2014 WL 5410199, at *8 (E.D. Pa. Oct. 23, 2014) ("Merely awarding [actual damages], however, would be insufficient to dissuade Defendants, and others like them, from engaging in future piracy. As such, some additional statutory damages are appropriate as a deterrent."); *J & J Sports Prods., Inc. v. Gencarelli*, 2012 WL 4442514, at *1 (D.N.J. Sept. 21, 2012) ("Courts of this District and the Third Circuit have approved the award of statutory damages in excess of actual damages for the purpose of deterrence") (internal citation omitted); *Joe Hand Promotions, Inc. v. Moore*, 2017 WL 741009, at *3 (W.D. Ark. Feb. 24, 2017) ("The purpose of these enhanced damages is to punish violations and simultaneously deter future piracy").

A nominal damage award provides a strong incentive for violators not to appear to deny the plaintiff any discovery of aggravating facts. This Court has found that "Defendants must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the Defendants and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than contracting with the Plaintiff." *J & J Sports, Prods. Inc. v. Castrillion*, 2009 WL 1033364, at *3 (E.D.N.Y. April 16, 2009); *see also Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at *8 (D.N.J. March 13, 2013) (finding enhanced damages "will help to deter future violations by these and similarly situated parties"); *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, at *4 (E.D. Cal. Jan. 10, 2011) ("the amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing

11

similar acts in the future.").  Further, "a willful infringer . . . should be liable for a substantial amount over and above the market value of a legitimate license for otherwise infringers would be encouraged to violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market." *Fallici v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983); *see Castrillion*, 2009 WL 1033364, at *3 ("Absent substantial financial penalties, the Defendants will likely continue to illegally display the plaintiff's programming and other such establishments will follow suit."); *J & J Sports Prods., Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669, 677 (D.S.C. 2011) ("The court, recognizing the need to deter this unlawful activity agrees with the Plaintiff that the award of modest damages does not satisfy the purpose of the legislation.  The undersigned is in agreement with other courts that have considered this issue that a firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately.").

Courts have found that significant statutory damages serve several purposes as it "fully compensates [p]laintiffs for their damages, and deters other from engaging in such illegal behavior[,] . . . admonishes [d]efendants for neglecting to participate in this litigation, and counsels those in similar circumstances to act differently.  This in turn promotes the efficiency of the judiciary, the just resolution of legal matters and protects litigants from incurring needless costs in the pursuit of justice." *Teri Woods Publ'g, L.L.C. v. Williams*, 2013 WL 6179182, at *4 (E.D. Pa. Nov. 25, 2013) (awarding maximum statutory damages "even though the Court is not privy to any evidence of Defendants' profits, Defendants' costs avoided or Plaintiffs' lost profits").

For these reasons, Plaintiff believes its requests are reasonable and respectfully requests damages in the amounts of $2,000 under § 605(e)(3)(C)(i)(II) and $8,000 under § 605(e)(3)(C)(ii) in line with recent damages awards in this Court.  *See G&G Closed Cir. Events, LLC v. Vasquez*,

2020 WL 8167387, at *4 (E.D.N.Y. Dec. 27, 2020), *report and recommendation adopted*, 2021 WL 135721 (E.D.N.Y. Jan. 14, 2021); *Joe Hand Promotions, Inc. v. Bernal*, 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019).  A total award of $10,000 is reasonable under the circumstances of this case and will fairly achieve the statutory goals of restitution and deterrence.

### E.  Individual Liability under Title 47 U.S.C. § 605

Defendant Pietro Manetta is directly liable. In its Complaint, Plaintiff alleged that Defendant Pietro Manetta "approved, directly participated in, and/or assisted in the Establishment's unauthorized exhibition of [*Ultimate Fighting Championship® 235: Jon Jones vs. Anthony Smith*]."  *See* Doc. No. 1 ¶ 5.d.  Defendant Pietro Manetta personally holds the liquor license for the Establishment.  *See* Declaration of Jon D. Jekielek, Exhibit C.  By virtue of default, Defendant Pietro Manetta has admitted he personally approved and directly participated in the unauthorized receipt and exhibition of the Event at the Establishment.  Therefore, Defendant Pietro Manetta is directly liable for the underlying Communications Act violations.

Though the evidence and admissions strongly support a finding of direct liability, should the Court find otherwise, Defendant Pietro Manetta is vicariously liable for the underlying Communications Act violation.  For an individual defendant to be held vicariously liable in a Communications Act case, Plaintiff need only show that the defendant had the right and ability to supervise the infringing activity and a direct financial benefit from the infringing activities. *See J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 659 (E.D.N.Y. 2019); *J & J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008).  "[T]here is no requirement that a corporate officer have authorized the infringement to be vicariously liable for it."  *Ribeiro*, 562 F. Supp. 2d at 501.  Plaintiff need only establish these two elements and does not need to prove a defendant's knowledge of the infringing activity.  *Arista Records, Inc. v. Flea*

*World, Inc.*, 2006 WL 842883, at *9 (D.N.J. 2006). "Even if Defendants were unaware of the Event being broadcast at their Establishment, personally had no intent to broadcast it, and realized no financial gain from it, Defendants are still vicariously liable for this willful violation of the statute." *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, 11 F. Supp. 3d 747, 759 (S.D. Tex. 2014).

As an owner holding the liquor license and member, manager, officer, and/or principal of the entity operating the Establishment on the night of the Event, Defendant Pietro Manetta had the right and ability to supervise the infringing activity and a direct financial benefit from the infringing activities. *See* Declaration of Jon Jekielek, Exhibit C. Therefore, Defendant Pietro Manetta is vicariously liable for the unauthorized exhibition of the Event at the Establishment. *See Ahuachapan Corp.*, 422 F. Supp. 3d at 659 ("It is hard to imagine a CEO without control over his or her company."); *Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 WL 2063819, at *4 (S.D.N.Y. 2005) (finding president and sole owner of small company vicariously liable for copyright infringement because it was "obvious" that he "had the ability to supervise the infringing activity"). Further, by virtue of default, Defendant Pietro Manetta admitted he had both the right and ability to supervise the infringing activities and a direct financial benefit from the infringing activities at the Establishment on the night of the Event and should be held individually liable for same.

## IV. CONCLUSION

Plaintiff is entitled to a default judgment against Defendant holding them liable for a sum, in the discretion of the court of up to $110,000.00 for violation of § 605(a). Plaintiff seeks damages pursuant to the above cited statute recognizing that damages caused by the Defendant are not easily quantifiable but cause substantial loss of business for Plaintiff. Additionally, such enhanced damages also serve to deter piracy in this state and nationwide. Furthermore, Plaintiff respectfully

14

requests that this Court award Plaintiff attorneys' fees and costs from Defendant pursuant to Title 47 U.S.C. § 605(e)(3)(B)(iii). In that regard, Plaintiff respectfully requests the Court take this Motion under consideration on the papers and issue judgment in Plaintiff's favor awarding damages to it as follows:

Violation of Title 47 U.S.C. §605(e)(3)(C)(i)(II) ………… $ 2,000.00

Violation of Title 47 U.S.C. §605(e)(3)(C)(ii) …………… $ 8,000.00

Attorneys' Fees…………………………………………. $ 1,435.00

Costs……………………………………………….. $   557.00

**TOTAL** ………………………………………………… $11,992.00

Respectfully,

Dated:  October 18, 2022                    By:    /s/ Jon D. Jekielek
                                                   Jon D. Jekielek, Esq.
                                                   Jekielek & Janis
                                                   31 Cloverhill Place, Floor 1
                                                   Montclair, NJ 07042
                                                   T: (212) 686-7008
                                                   jon@jj-lawyers.com

                                                   Attorneys for Plaintiff