UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOE HAND PROMOTIONS, INC.,                    :
                                              :
                Plaintiff,                    :
                                              :
v.                                            :        Case No. 1:22-cv-01114-AMD-TAM
                                              :
PIETRO MANETTA,                               :
                                              :
                Defendant.                    :
                                              :

## DECLARATION OF JOSEPH P. HAND, III

I, JOSEPH P. HAND, III, declare as follows:

1.      I am the President of Plaintiff, Joe Hand Promotions, Inc. ("JHP"), and as such I am fully familiar with the facts, circumstances and proceedings of the instant matter. I am over the age of 18 years and competent to make this declaration. As President of Plaintiff, Joe Hand Promotions, Inc. at all material times in this case, facts in this declaration are within my personal knowledge and are true and correct.

2.      I make this affidavit in support of Plaintiff's request to recover statutory damages, including attorneys' fees, costs, and interest in the within motion for judgment by default.

3.      Our company, JHP, is a closed-circuit distributor of sports and entertainment programming. Our company purchased and retained the commercial exhibition rights to the *Ultimate Fighting Championship® 235: Jon Jones vs. Anthony Smith* broadcast, including all undercard bouts and commentary, on March 2, 2019 at 10:00pm Eastern time (hereinafter the "Event"). Our company thereafter marketed the sub-licensing (commercial exhibition) rights for the Event to our company's commercial customers (i.e., bars, restaurants, nightclubs, lounges,

etc.). A true and correct copy of the Agreement is attached to Plaintiff's Motion for Default Judgment as "Commercial Licensing Agreement".

4.      Simultaneously with the advent of pay-per-view programming, we began to experience serious erosion in the sales of our own proprietary programming to our commercial customers throughout the United States of America.  To protect ourselves, we endeavored to find out what was the basis for the erosion and determined from our customers that the cause of the erosion of our customer base was the rampant piracy of our broadcasts by unauthorized and unlicensed establishments (signal pirates).

5.      In response, we embarked upon a nationwide program to police our signals for the purpose of identifying and prosecuting commercial establishments which pirate our programming (including the *Ultimate Fighting Championship® 235: Jon Jones vs. Anthony Smith* event, the subject program involved in this lawsuit).

6.      Specifically, JHP retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates.  To ensure that only illegal locations were visited by the auditors, our company compiled our confidential list of customers (authorized and legal locations) who paid the required license fee to broadcast the Event, and this list was distributed to participating auditing and law enforcement agencies in strict confidence.

7.      Domestic commercial establishments, which contract with us, were required to pay JHP a commercial sublicense fee to broadcast the Event.  This sublicense fee for the Event was based on the capacity of the establishment and varies for each event.  For example, for this particular event, if a commercial establishment had a maximum fire code occupancy of up to seventy-five (75) persons, the commercial sublicense fee would have been $980.  A true and

correct copy of the Rate Card is attached to Plaintiff's Motion for Default Judgment as "Rate Card."

8.    To safeguard against the unauthorized receipt of the broadcast by commercial locations, cable and satellite television providers scramble, restrict and/or block commercial customer accounts and equipment from ordering or receiving Pay-Per-View programs.

9.    If a commercial location or establishment wishes to receive and exhibit a Pay-Per-View program, the location pays the proper commercial fee to JHP. Then, JHP notifies the location's cable or satellite provider to unscramble that program for receipt through the location's commercial cable or satellite account.

10.    Defendant is the owner and operator of M.I.A. Made in Astoria, a commercial establishment previously located at 27-35 21st Street, Astoria, NY 11102 (the "Establishment").

11.    Defendant did not pay the commercial fees to JHP to legally receive the Event through their commercial cable or satellite provider.

12.    JHP did not notify the Establishment's cable or satellite provider to unblock the Establishment's account to allow the Establishment to receive and broadcast the Event to its patrons.

13.    JHP did not authorize Defendant to exhibit the Event at the Establishment to their patrons.

14.    The Event contained several televised under-card bouts and color commentary, along with the main event prizefight. As set forth within the sworn affidavit of Gary Joseph, Mr. Joseph observed the *unlawful* exhibition of the Event at Defendant's establishment doing business as M.I.A. Made in Astoria in the early hours of March 2, 2019 (as at no time did this Establishment ever lawfully license the Event from our company for such a purpose). Upon entering, Mr. Joseph

3

observed the Event broadcasted on two (2) televisions and one (1) projection screen in the Establishment to approximately forty (40) patrons. A true and correct copy of the Affidavit of Gary Joseph is attached to Plaintiff's Motion for Default Judgment as "Affidavit of Gary Joseph."

15. Defendant also advertised on the Establishment's official Facebook page that the Establishment would broadcast the Event. In my experience, this is done solely to increase the number of patrons and in turn realize greater financial gain directly from the unauthorized broadcast of the Event at the Establishment.

16. It is essential that I communicate to the court that to the best of my knowledge our programming is *not* and cannot be mistakenly, innocently, or accidentally intercepted.

17. Turning these facts to the matter before the court I have been advised by counsel that the court has wide discretion in the awarding of statutory damages for nefarious, illegal and debilitating activities of signal pirates which are injurious to our company and our lawful customers.

18. It is respectfully submitted to this court that the unchecked activity of signal piracy not only has resulted in our company's loss of several millions of dollars of revenue, but also has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities, including the depravation of tax revenue to the communities where our potential customers reside, and the denial of benefits such tax revenue would provide the residents of such communities.

19. We, at JHP, believe that the persistent signal piracy of our programming costs our company, our customers, and their communities millions of dollars annually resulting in part, from the perceived lack of consequences (including nominal or minimal damage awards by the courts who hear our cases).

20.    For these reasons I ask this court to grant substantial statutory damages against the Defendant for their unauthorized broadcast of JHP's proprietary programming.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 22nd day of September, 2022 at Feasterville, Pennsylvania.

Joseph P. Hand, III,
*also* *known* *as* Joe Hand, Jr.
*President of Plaintiff, Joe Hand Promotions, Inc.*
*(JHP)*