## COMMERCIAL LICENSING AGREEMENT

This Commercial Licensing Agreement ("**Agreement**") is made and entered into effective as of January 1, 2019 by and between Zuffa, LLC d/b/a the Ultimate Fighting Championship® ("**ZUFFA**") organized under the laws of the State of Nevada, with its principal place of business located at 6650 S. Torrey Pines Drive, Las Vegas, NV 89118, and Joe Hand Promotions, Inc., a corporation chartered in the State of Pennsylvania with its principal place of business located at 407 E. Pennsylvania Boulevard, Feasterville, Pennsylvania 19053 ("**JHP**").

## RECITALS

**WHEREAS**, ZUFFA produces live pay-per-view broadcasts of UFC-branded mixed martial arts bouts and related pre- and post-bout events (hereinafter referred to as the "**Event(s)**");

**WHEREAS**, JHP is engaged in the business of promoting and distributing commercial closed-circuit events;

**WHEREAS**, ZUFFA desires to distribute the Events in the Distribution Channel (defined below) and JHP desires to promote and distribute the Events on in the Distribution Channel in the continental United States, Alaska, and Hawaii (the "**Market Territory**").

**NOW THEREFORE**, in consideration of the above and for other valuable consideration ZUFFA and JHP agree as follows:

1.    *Appointment of JHP.* Subject to the terms and conditions set forth in this Agreement, ZUFFA hereby grants JHP the sole and exclusive third party license during the Term (defined below) to distribute and authorize the public display of the Events through the Distribution Channel in the Market Territory, and JHP agrees fully and faithfully to perform and discharge the duties, obligations, and responsibilities provided for in this Agreement. ZUFFA represents that, as of the date hereof, it has no other such agreements with any other distributor for the Events in the Market Territory for the Distribution Channel. ZUFFA's distribution of the Events through the Distribution Channel by any other third party entity in the Market Territory during the term of this Agreement shall be considered a breach of this Agreement (provided that the unauthorized distribution thereof shall not be deemed a breach of this Agreement). Solely if expressly approved by ZUFFA in writing, "Events" may include a replay of one or more specific live pay-per-view broadcasts.

       a.    Any and all rights to the Events or any elements thereof not specifically licensed to JHP under the Agreement are expressly reserved to UFC, including without limitation, territories not licensed herein, all series' format rights, all other forms of distribution not licensed herein, residential distribution, non-Event programming, highlights, clips, videocassette, home video, digital video disk

1

(DVD), broadband and Internet rights over the world wide web and via mobile devices (i.e. through an open platform made available publicly), print, merchandising, or by any other similar or dissimilar means in any media or distribution paths now known or hereafter devised, except as expressly set forth herein. Such reserved rights may be freely exploited by any non-television or television distribution technology at any time throughout the world by UFC.

2.     *Distribution Channel.* JHP shall be the sole and exclusive third party distributor of non-residential distribution of the Events to commercial establishments on a closed-circuit basis (which shall not include the distribution of the Events to commercial establishments where the intent thereof is to display such Events to a de-minimus number of customers (e.g., airlines where the intended recipient is an individual passenger, or hotels where the intended recipients are the occupants of a hotel room)) and may only distribute the Events through closed circuit television authorizing the public display by commercial establishments in accordance with the foregoing (the "**Distribution Channel**"). Unless prior written approval by ZUFFA is received, the Distribution Channel does not include (i) any commercial establishments located in Clark County, Nevada; (ii) any commercial establishments located within thirty (30) miles of the Event site;  (iii) any hotel-casino or any affiliate hotel-casino of the Event host hotel-casino or Event host sponsor(s) within a twenty (20) mile radius from the Event site; and (iv) theatrical and movie theater locations, or other national entertainment content provider that broadcasts entertainment events to movie theaters. Additionally, nothing herein shall in anyway limit or restrict ZUFFA's absolute rights to show the Events to residences, hotel rooms, dormitories, military base residential living, and all similar locations, via any and all means and modes of pay-per-view television, Internet, wireless, broadband, and all other means or modes now known or hereafter developed.

3.     *Authority and Capacity.*  JHP is an independent contractor, is not an agent of ZUFFA, and is not authorized to waive any right or to incur, assume or create any debt, obligation contract or release of any kind in the name of or on behalf of ZUFFA. Nothing herein shall be construed so as to create an employer-employee, agency, partnership, or joint venture relationship between the parties hereto.

4.     *Scope of Event.* JHP agrees that it will not electronically distribute directly or indirectly, through itself or others, any other non-boxing-affiliated fighting contests, including mixed-martial arts contests, in the Market Territory during the term of this Agreement or any extensions thereof. It is understood that this provision does not include World Wrestling Entertainment and Ring of Honor Wrestling. Regulated boxing matches undertaken under the auspices of a recognized boxing federation and/or a state boxing commission shall not be considered a competing Event for the purpose of this Agreement.

5.     *Term.*  This Agreement shall become effective upon execution by JHP and ZUFFA and shall continue in effect until December 31, 2020 (the "**Term**"). At least thirty (30) days prior to the expiration of the Term, the parties will meet and discuss in good faith a potential extension of this Agreement on the terms set forth herein or on

2

other mutually agreed terms. For the avoidance of doubt, ZUFFA shall not be obligated to enter into an extension or any other new agreement with JHP.

6.      *Estimated Number of Events.* UFC estimates it will stage approximately twelve (12) Events per calendar year during the Term, but both parties understand and agree that the actual number of Events could be more or less than twelve (12).

7.      *Best Efforts to Market.* JHP shall exercise its best efforts to advertise, promote and market the Event and to promote the goodwill of ZUFFA and the market reputation of the Event. JHP shall conduct its activities related to the marketing of the Event in a professional manner and in accordance with the reasonable policies and procedures of ZUFFA in effect from time to time and the terms of this Agreement.

8.      *Advertising.* JHP shall advertise the Event in a manner that will develop customer interest in ZUFFA and in the Event. JHP shall be entitled, during the term of this distributorship created by this Agreement to advertise and hold itself out as an authorized distributor of the Event through the Distribution Channel. JHP shall submit examples of all proposed advertisements and other promotional materials of the Event to ZUFFA for inspection and JHP shall not use any such advertisements or promotional materials without having received the prior written consent of ZUFFA to do so and the Parties agree to continue to timely collaborate with respect to advertising as consistent with past practice between the Parties. JHP shall not, pursuant to this Agreement or otherwise, have or acquire any right, title or interest in or to ZUFFA's Trademarks.

      8.1    JHP shall prepare all documentation necessary to meet the legal requirements of distribution through the Distribution Channel, including but not limited to: (i) preparation of licenses and technical documentation for each location, (ii) distribution of marketing and promotional materials, and (iii) collection of all funds and preparation of sales and revenue reports in a timely fashion.

      8.2    JHP shall provide direct marketing, such as mailing pieces and other forms of advertising to create awareness of the Event. Such direct marketing shall comply with all Federal, State and local laws.

      8.3    With prior written approval by ZUFFA, JHP may utilize the services of other regional distributors in the Distribution Channel to maximize the sales and distribution efforts on the Event. Any such company shall be bound under the same terms and conditions listed in any contract between JHP and ZUFFA and JHP shall be responsible for ensuring that such regional distributor comply with such terms. ZUFFA shall not be subject to any double commissions and JHP agrees to be solely responsible for any and all commissions, fees and other amounts that may be due to any sub-distributors. JHP shall not be entitled to any additional compensation from ZUFFA in respect of such regional distributors. JHP shall indemnify, defend and hold ZUFFA, its officers, directors, members, employees and agents harmless from and against all claims of other regional distributors arising under this Agreement and relating to the Events(s).

3

9.      *Security.* JHP shall use reasonable best efforts to discourage theft of service and the unauthorized public display of Events at commercial locations. In an effort to protect the Distribution Channel broadcast rights, JHP will coordinate and finance its own piracy program. Net License Fees generated in the Distribution Channel by JHP or ZUFFA through piracy settlements shall be split ███████████████████████████████ ███████████; provided that any Net License Fees obtained prior to July 15, 2019 or obtained anytime through piracy settlements instituted or initiated prior to July 15, 2019, shall be split ██████████████████████████████████ Upon written demand, JHP shall provide ZUFFA with a complete list of verifiable customers. JHP shall immediately notify UFC upon discovery of any theft, piracy or any unauthorized exhibition, distribution, alteration, copying or duplication of the Events or any other UFC content or programming. ZUFFA agrees that as exclusive commercial licensee, JHP may assert claims and file lawsuits in its own name under the Communications and Copyright Acts against unauthorized non-residential/commercial establishments that obtain the Events through cable, satellite, or Internet (including commercial misuse of UFC.tv streams), subject to, in each case, ZUFFA's prior written approval.

10.     *Commercial Data.* To the extent permitted by law, JHP agrees to collect and report to ZUFFA data in respect of Distribution Channel and commercial establishment data, including location, address, contact person, price and purchase history on an Event-by-Event basis, as well as non-personally identifiable consumer information, including buying habits, usage behavior and economic data, as applicable ("**Commercial Data**") with respect to JHP's distribution of the Events. JHP acknowledges that such Commercial Data constitutes Confidential Information for purposes of the License Agreement and does not disclose such Commercial Data to any third parties. JHP represents, warrants and covenants that it does and will comply with all applicable privacy and information security laws and regulations applicable to such Commercial Data.

11.     *Zuffa Obligations.* Subject to ZUFFA's prior written approval, in each case, ZUFFA hereby grants JHP permission to enter into agreements with DirecTV, Dish Network, other DBS satellite providers, individual cable system operators, and Internet Protocol television (IPTV) providers which shall act as authorization sources for their commercial customers utilizing that technology to broadcast the Events. If necessary, JHP shall ask ZUFFA and ZUFFA shall cooperate to assist in its negotiations with these digital authorization sources in order to reach an agreement on terms for authorizing the requested commercial account. ZUFFA and JHP shall jointly use its best efforts to obtain the most favorable terms and fees from all such providers. JHP agrees that any new media platforms must be approved by ZUFFA, in its sole and absolute discretion.

12.     *Compensation.* JHP shall pay ZUFFA the following for each Event distributed in the Distribution Channel, JHP shall pay ZUFFA eighty nine percent (89%) of the Net License Fees collected.

4

**13.1** Additionally, ZUFFA shall pay to JHP each of the following bonuses, subject in each case to the Events being distributed to such commercial establishments at a price no less than 80% of ZUFFA's then existing Rate Card (as defined below) for such Event:

(a) a "Target Location Bonus" as follows:

i.

ii.

iii.



(b) a "New Location Bonus" as follows:

i.



(c) a "Streaming Bonus" as follows:

i.



**13.2** Net License Fees are defined as gross license fees (not including the carrier authorization fee), less actual credit card fees (capped at 2.5% but less actual merchant rebates, if any) and any miscellaneous event license taxes.

**13.3** JHP shall provide the Net License Fees within fifteen (15) days after the live broadcast of each Event and, if applicable, on a rolling basis within fifteen (15) days of receipt. JHP agrees that all revenues associated with ZUFFA will be held in a separate trust bank account for ZUFFA.

**13.4** JHP may reconcile any bad debt expense incurred during the year in the last settlement remitted to ZUFFA in that same year. The total amount of bad debt owed to JHP will be ZUFFA's proportionate share of the total bad debt based on the sales

commission rate for that year, less any amounts that had previously been recovered. JHP will provide ZUFFA with a quarterly bad debt report in each quarter of the term.

13.5 The Suggested Retail Price shall be determined by ZUFFA, in its sole discretion ("**Rate Card**"), after consultation with JHP. The actual retail price of distribution shall be determined by JHP in its sole discretion, provided distribution at a discounted rate of greater than 10% off the Rate Card shall be subject to consultation with ZUFFA.

14. *Proprietary Rights.* ZUFFA agrees that JHP is hereby licensed by ZUFFA the right to authorize the exhibition of the Events publicly within the meaning of 17 U.S.C. § 106(4) & (5). All intellectual property including patents and patent applications, trademarks, servicemarks, copyrights, tradenames and other proprietary rights in and with respect to the Event and Promotional Materials are and will remain solely and exclusively the property of ZUFFA. During the term of this Agreement, JHP may indicate that it is an authorized distributor of the Event for ZUFFA and may within the direction of ZUFFA use the trademarks, servicemarks, logos, symbols and tradenames of ZUFFA applicable to the Event in connection with JHP's advertising, promotion, distribution and sale of the Event in the Market Territory in accordance with the terms of this Agreement;

14.1   JHP shall neither acquire nor assert any intellectual property right, title or interest in or directly or indirectly obtain or attempt to obtain at any time any right, title or interest by registration or otherwise in or to the tradenames, trademarks, symbols or designations owned or used by ZUFFA. Any and all work by JHP pertaining in any way to this Agreement is expressly deemed and agreed to be work-for-hire and all rights belong to ZUFFA. JHP agrees that any and all work by JHP and all intellectual property, including without limitation, concepts, ideas, copy, graphics, compilations, sketches, artwork, electronic files, video, film, photography, photograph layouts, any and all derivative works, and other materials related to the Events will become the sole and exclusive property of ZUFFA throughout the world in perpetuity. ZUFFA may use any and all materials generated as it sees fit without any additional compensation; however, ZUFFA is not under any obligation to use such materials. To the extent that any of the materials may not, by operation of law or otherwise, be a work made for hire in accordance with the terms of this Agreement, JHP hereby irrevocably assigns and transfers to ZUFFA all right, title and interest in and to any registrations and copyrights, and ZUFFA shall have the right to obtain and hold in its own name any copyrights, registrations and other proprietary rights which may be available. All reproduction rights are retained by ZUFFA and any and all work by JHP may not be reproduced in any form without written consent from ZUFFA. JHP hereby assigns to ZUFFA all JHP's worldwide right, title and interest in ZUFFA's trademarks, servicemarks, logos, symbols and tradenames, and in any derivation, adaptation, variation or name thereof. Without limiting the foregoing, JHP hereby assigns to ZUFFA all JHP's worldwide right, title and interest in any material objects consisting of or incorporating any drawings, paintings, or other

6

derivations, adaptations, compilations, collective works, variations or names relating to Event or ZUFFA;

**14.2** Whenever JHP is permitted to employ any trademark or servicemark of ZUFFA in any form on printed materials, JHP shall place immediately after and slightly above the use of the trademark, "®" or "TM" (or any other mark as determined by ZUFFA) and indicate that it is the trademark or registered trademark of ZUFFA. Such marks should be placed, for example, as follows:

> Ultimate Fighting Championship®
> UFC ®
> Ultimate Fighting®
> The Octagon™

**15.** *Unauthorized Use.* JHP agrees to give ZUFFA prompt written notice of any unlicensed use by third parties of ZUFFA's trademarks or tradenames and that JHP will not, without ZUFFA's written consent, bring or cause to be brought any criminal prosecution, lawsuit, or administrative action for infringement, interference with or violation of any rights to trademarks or tradenames. JHP agrees to cooperate with ZUFFA, and, if necessary, to be named by ZUFFA as a sole complainant or co-complainant in any action against an infringer of ZUFFA's trademarks or tradenames, and notwithstanding any right of JHP to recover same, legal or otherwise, JHP agrees to pay ZUFFA, and hereby waives all claims to, all damages or other monetary relief recovered in such action by reason of a judgment or settlement whether or not such damages or other monetary relief, or any part thereof, represent or are intended to represent injury sustained by JHP as a distributor hereunder; in any such action against infringer, ZUFFA agrees to reimburse JHP for reasonable expenses incurred at ZUFFA's request, including reasonable attorney's fees if ZUFFA has requested JHP to retain separate counsel, or has approved the retention of separate counsel. JHP shall have the right but not the obligation to assert any independent claims it may have against an alleged infringer and, in such case, any damages awarded to JHP on its independent claims shall be the sole property of JHP. To the extent that independent claims are asserted but no allocation of damages is made then all such damages shall be allocated as though they were revenue.

**16.** *Confidentiality.* ZUFFA and JHP agree to keep the terms and conditions of this Agreement confidential, and shall not disclose such terms and conditions of this Agreement or any other confidential information provided by either party to the other to any third party without obtaining the other's prior written consent; provided however, that this Agreement may be disclosed on a need-to-know basis to a Party's attorneys and accountants who agree to be bound by this confidentiality provision or by Court order or by subpoena, and, in the case of ZUFFA, pursuant to any regulatory requirements, provided further that information that (i) is in the public domain through no unauthorized disclosure by the applicable party, (ii) that is independently developed by the applicable party, or (iii) was lawfully received from a third party by the applicable party. Each Party hereby consents to each Party's disclosure of information of a financial nature in this

7

Agreement to its auditors and to financial institutions in the ordinary course of business. In addition, each Party may have access to information concerning the other's business and operations, and/or other matters relating to ZUFFA's creations or business plans solely to the extent relating to this Agreement, which information may not be accessible or known to the general public.

17.    *Zuffa Indemnification.*    ZUFFA shall indemnify, defend and hold JHP, its officers, directors, employees, affiliates and agents (the "Indemnitees") harmless from and against all third party claims, demands, suits, judgments, losses, liabilities (including settlements entered into in good faith with ZUFFA's consent) and expenses of any nature (including reasonable attorneys' fees) that any Event infringes any patent, trademark, servicemark, tradename or other intellectual property rights in the Market Territory. ZUFFA shall also indemnify, defend and hold the foregoing Indemnitees harmless for any claim, fine or penalty that may arise out of or involve the content of any ZUFFA event, including but not limited to charges of obscenity or profanity or any of the violation of FCC rules or regulations that may apply. ZUFFA shall assume the defense of any suit based on any such claim of infringement brought against the Indemnitees specifically relating to the Event by retaining at ZUFFA's expense counsel satisfactory to JHP to represent the Indemnitees. ZUFFA shall timely pay any damages assessed against or otherwise payable by the Indemnitees as a result of the final disposition of any such suit relating to the Event.

18.    *Zuffa Indemnification Conditions.* ZUFFA's indemnity hereunder is conditioned upon: (a) ZUFFA's receipt of written notice of any such claim or of the commencement of any such suit, or threats thereof after JHP has received notice of same; (b) ZUFFA having full opportunity to conduct the defense thereof; and, (c) the co-operation of the Indemnitees in the defense of such claim. The Indemnitees shall not incur any defense costs without ZUFFA's prior written consent.

19.    *JHP Indemnification.* JHP shall indemnify, defend and hold ZUFFA, its affiliates, members, parents, successors, officers, directors, employees and agents, harmless during and after the term hereof against all third party claims, demands, suits, judgments, losses, liabilities (including settlements entered into in good faith with JHP's consent) and expenses of any nature (including reasonable attorneys' fees) arising out of JHP's activities under this Agreement, including but not limited to, any actual or alleged: (a) negligent acts or omissions on JHP's part relating to its performance hereunder; (b) personal injury; (c) infringement of any rights, other than intellectual property rights of the Event, of any other person by the manufacture, sale, possession or use of the Event; (d) breach on JHP's part of any covenant, representation or warranty contained in the Agreement; (e) claims, litigation and publicity as a result of claims made against commercial locations on behalf of JHP, including letters of demand, and litigation, or, (f) failure of JHP to comply with applicable Laws, including but not limited to, violations of antitrust laws. JHP shall timely pay any damages assessed against or otherwise payable by ZUFFA as a result of the final disposition of any such suit.

8

**20.**    *JHP Indemnification Conditions.* JHP's indemnity of ZUFFA hereunder is conditioned upon: (a) ZUFFA giving prompt written notice to JHP of any such claim or commencement of any such suit, or threats thereof after ZUFFA has received notice of same; (b) JHP having full opportunity to conduct the defense thereof; and, (c) the co-operation of ZUFFA in the defense of such claim. ZUFFA shall not incur any defense costs without JHP's prior written consent.

**21.**    *Termination.* ZUFFA may terminate this Agreement, by giving JHP at least thirty (30) days written notice of the intention to terminate, in the event of any of the following occurrences:

**21.1** Any act of dishonesty or violation of laws by JHP arising in relation to this Agreement, which could affect JHP's ability to perform hereunder or which, in the sole judgment of ZUFFA, could be detrimental to ZUFFA or its business;

**21.2**    The unauthorized release to third parties by JHP proprietary, confidential or commercially sensitive information, which refers to or relates to ZUFFA or the Event(s);

**21.3**    Changes in laws or governmental policies making it impractical for the Event to be produced or for JHP to act as a distributor for the Event;

**21.4**    The cessation of business activities by JHP, including:

(a)  the insolvency or admission by JHP of its inability to pay its debts as they mature,

(b)  the filing of a petition for bankruptcy or similar proceedings by or against JHP or,

(c)  general assignment for the benefit of JHP's creditors or similar acts.

**21.5**    Any material breach by JHP of any term or condition set forth in this Agreement other than those set forth above, provided, however, that for any such breach, JHP shall not have cured such breach has been given to JHP by ZUFFA; or

**21.6**    The failure of JHP to cure to ZUFFA's satisfaction any material breach by JHP of any term or condition of this Agreement (other than those set forth immediately above) within thirty (30) days written notice of such breach to JHP.

**22.**    *Effect of Termination or Expiration.* Upon termination of the Agreement:

9

**22.1**    JHP shall discontinue the use of any and all ZUFFA's intellectual property, including, but not limited to tradenames, trademarks, symbols or designations associated with ZUFFA or the Event and shall immediately discontinue designating itself as an authorized distributor of ZUFFA.

**22.2**    Each Party shall immediately return to the other all items of proprietary or confidential information delivered hereunder.

**22.3**    With exception of a termination for cause, ZUFFA shall return a pro-rata refund of Net License Fees to JHP relating to future Events during the Term.

**23.**    *Remedies.*    Neither the right to terminate nor the actual termination of this Agreement upon breach of any provision hereof shall limit either party from pursuing whatever relief it deems appropriate for such breach, in accordance with, and subject to any limitations contained herein.

**24.**    *Regulatory Termination.*    In the event that a Regulatory Problem (as hereinafter defined) arises at any time as a result of this Agreement or the underlying relationship between ZUFFA and JHP (or any of their affiliates, members or subsidiaries), ZUFFA shall take all action deemed reasonably necessary by its officers, members, managers or advisors, including, without limitation, amending or terminating this Agreement, in order to eliminate such Regulatory Problem.    For purposes of this Section, "**Regulatory Problem**" means any circumstances such that ZUFFA's continued affiliation or contractual relationship with JHP (or any affiliate thereof), is deemed likely, in the reasonable judgment of ZUFFA, based on a verbal or written inquiry or verifiable information or information received from any gaming or athletic authority, to preclude or materially delay, impede, jeopardize or impair the ability of ZUFFA or any of its officers, owners, members, managers, employees or affiliates to obtain or retain any gaming or athletic license, or such as may result in the imposition of materially burdensome terms and conditions on any such gaming or athletic license, or such as could subject ZUFFA or any of its officers, owners, members, managers, employees or affiliates to any disciplinary proceedings by any gaming or athletic authority, or such as would constitute a violation of the gaming or athletic laws.

**25.**    *Force Majeure.*    If either party is delayed, or interrupted in, or prevented from the performance of its obligations hereunder by reason of an act of God, fire, flood, war, public disaster, strikes or labor difficulties, governmental enactment, regulation or order, or any other cause beyond its control, and if such party has given the other party prompt notice hereof and, on request, such confirmatory documentation as the other party may reasonably request and has in good faith kept the other party apprised of when the delay, interruption or prevention is expected to be resolved, the time for the performance of the party's obligations shall thereupon be extended for a period equal to the duration of the contingency that occasioned the delay, interruption or prevention, but not exceeding sixty (60) days unless otherwise mutually agreed.    If the force majeure condition continues for more than sixty (60) days, either party may terminate this Agreement upon written notice to the other party.

10

26.    *Compliance with United States Laws and Regulations.*  It is understood that imports and sales of the Event by JHP may require approvals pursuant to and in compliance with federal and state laws and regulations of the Market Territory.  In order to assure that imports and sales of the Event made pursuant to this Agreement do not violate any applicable laws or regulations, the parties agree as follows:

26.1    JHP shall promptly provide to ZUFFA information on laws, rules, and regulations of the Territory or of any State or political sub-division thereof insofar as such laws, rules, or regulations affect or are likely to affect (i) JHP's rights to distribute or sell the Event; or (ii) ZUFFA's rights under this Agreement.

26.2    JHP shall at all times comply with, and shall require its dealers at all times to comply with, all applicable laws, rules and regulations of the Territory or of any State or political subdivision thereof that affect or impact this Agreement and each party's rights and obligations hereunder or that affect or regulate the manufacture of the Event or their importation into the Market Territory.

27.    *Notices.*    All notices, demands, requests, consents, approvals or other communications (collectively "Notices") required or permitted to be given hereunder or which are given with respect to this Agreement shall be in writing, addressed to the party to be served at the address set forth on page 1 of this Agreement with copies to ZUFFA, attention Ike Lawrence Epstein, Senior EVP & COO, Riche T. McKnight, General Counsel and Frank Lamicella, Corporate Counsel and with copies to JHP, attention John C. Fenningham, Esquire, Fenningham, Dempster & Coval, LLP, Suite 315, 5 Neshaminy Interplex, Trevose, PA 19053 (jfenningham@fsdc-law.com) and may be served personally or by depositing the same address as herein provided (unless and until otherwise notified), postage prepaid in the United States Mail.  Such Notice shall be deemed served upon personal delivery or upon the date of mailing; provided however, that ZUFFA shall be deemed to have been served with a notice of request for approval of materials under this Agreement only under ZUFFA's actual receipt of the request.

28.    *Counterparts.*  This Agreement may be executed in counterparts, each shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

29.    *Governing Law; Forum Selection; Consent to Jurisdiction.*  This Agreement and its incorporated Exhibits have been delivered at and shall be deemed to have been made and entered into in Las Vegas, Nevada.  Accordingly, the rights and liabilities of the parties shall be determined in accordance with the laws of the State of Nevada, without regard to its principles of conflicts of laws.  The parties agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the United States District Court, District of Nevada, sitting in Las Vegas, Nevada.  Each party irrevocably consents to the service of process in any such dispute if served in accordance with the notice provisions contained herein.

11

30.    *Remedies Cumulative.*  Unless otherwise provided for under this Agreement, all rights of termination or cancellation, or other remedies set forth in this Agreement, are cumulative and are not intended to be exclusive of other remedies to which the injured party may be entitled by law or equity in case of any breach or threatened breach by the other party of any provision in this Agreement.  Use of one or more remedies shall not bar use of any other remedy for the purpose of enforcing any provision of this Agreement.  JHP's sole remedy for breach of this Agreement by ZUFFA shall be an action for money damages and in no event shall JHP be entitled to injunctive or other equitable relief. Otherwise, either Party may seek equitable relief against the other under this Agreement, including but not limited to injunctive relief.

31.    *Entire Agreement.*  The terms of this Agreement are intended by the parties as a final expression of their Agreement with respect to such terms as are included in this Agreement and may not be contradicted by evidence of any prior contemporaneous agreement.  The parties further intend that this Agreement constitutes the complete and exclusive statement of its terms and that no extrinsic evidence whatsoever may be introduced in any judicial proceeding, if any, involving this Agreement.

32.    *Modification and Amendments.*  This Agreement may not be modified, changed or supplemented, nor may any obligations hereunder be waived or extensions of time for performance be granted, except by written instrument signed by the parties..

33.    *Waivers and Extensions.*  No waiver or breach of any Agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other agreement or provision herein contained.  No extension of time for performance of any obligations or acts shall be deemed an extension of time for performance of any other obligations or acts.

34.    *Titles and Headings.*  Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provisions of this Agreement.

35.    *Schedules.*  Each of the Schedules, if any, referred to herein and attached hereto is an integral part of this Agreement and is incorporated herein by reference.

36.    *Consents and Approvals.*  Whenever consent or approval of either party is provided for in this Agreement, such consent or approval shall be required to be given in writing to the requesting party.

37.    *Further Assurances.*  The parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as the other may reasonably require to consummate, evidence or confirm the agreements contained herein in the manner contemplated hereby.

38.    *Assignments and Sublicenses.*  The services to be provided by JHP hereunder are peculiar and special in nature.  Therefore, neither JHP nor ZUFFA shall assign this

Agreement in whole or in part without the prior written consent of the other party. Notwithstanding the foregoing, ZUFFA may assign this Agreement or any of its rights hereunder, without the other's consent, to any entity with which it may be merged or consolidated or which acquires all or substantially all of its assets, provided that such an entity agrees in writing to assume all applicable obligations under this Agreement. Any purported assignment or transfer by ZUFFA of any of its rights or obligations under this Agreement other than in accordance with the provisions of this Section shall be void, unless otherwise approved by the parties. This Agreement will bind and inure to the benefit of the respective successors and permitted assigns of JHP or ZUFFA.

**39.** *Severability.* If any provision of this Agreement is found to be invalid by any court, the invalidity of such provisions shall not affect the validity of the remaining provisions hereof.

**40.** *Survivability.* The respective obligations of the parties under this Agreement, which by their nature would continue beyond the termination, cancellation or expiration of this Agreement, including but not limited to indemnification, audit rights and piracy settlement payments, shall survive termination, cancellation or expiration of this Agreement.

**41.** *Audit Rights.* JHP shall keep full, clear and accurate books of account and records with respect to all financial terms, including and not limited to gross license fees, Net License Fees, authorization fees, credit card fees and any miscellaneous event license taxes pursuant to this Agreement. The books and records shall be maintained in such a manner that the reports required herein shall be readily verifiable.  ZUFFA, and ZUFFA's designated agents (designated in writing by ZUFFA), shall have the right to examine and audit JHP's records at JHP's business premises upon reasonable prior notice to JHP and during normal business hours. ZUFFA shall be entitled to examine and audit JHP's records once in any calendar year unless a prior audit by ZUFFA in that year revealed a deficiency. If ZUFFA's audit reveals an overpayment in any payments due to ZUFFA pursuant to this Agreement, such amounts will be credited against the payments next due. If ZUFFA's audit reveals a deficiency in any payment due under this Agreement, JHP shall remit the amount of the deficiency within 10 days after demand thereof together with interest at a rate of seven percent (7%) per annum. If any such audit shows a deficiency of greater than five percent (5%) with respect to the amounts that should have been paid to ZUFFA, the reasonable cost of such audit shall be paid by JHP. After twelve (12) months from the date of any report and corresponding payment, that report shall be deemed final and binding and ZUFFA shall have no further right to contest the report or payment of ZUFFA's revenue share as specified therein. Notwithstanding the foregoing, if JHP disagrees with the results of an audit by ZUFFA, JHP and ZUFFA shall mutually agree upon a third party accounting firm to review ZUFFA's audit and the results thereof shall be binding on ZUFFA and JHP.

**42.** *Corporate Authority.* Each individual executing this Agreement on behalf of any corporation or other legal entity which is a party to this Agreement represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf

13

of said corporation or legal entity, in accordance with a duly adopted resolution of the Board of Directors of said corporation or other managing body with requisite authority, and that this Agreement is binding upon said corporation or other entity in accordance with its terms.

**43.    *Language.*** This Agreement has been negotiated and written in English.  The English text shall be the only controlling text.

14

**IN WITNESS WHEREOF**, the parties have executed this Agreement effective as of the date first written above.

ZUFFA, LLC

By:

Printed Name: Ike Lawrence Epstein

Title: SEVP & COO


**JOE HAND PROMOTIONS, INC.**

By:

Printed Name: Joseph Hand, Sr.

Title: Chairman

15