UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
JOE HAND PROMOTIONS, INC.,

                    Plaintiff,

       -against-

PIETRO MANETTA,

                    Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
22-CV-1114 (AMD) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Joe Hand Promotions, Inc. commenced this action against Defendant Pietro Manetta on March 2, 2022, alleging violations of the Federal Communications Act of 1934 (the "FCA"), 47 U.S.C. §§ 553, 605. (*See* Complaint ("Compl."), ECF No. 1.) On July 21, 2022, the Clerk of Court certified Defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and Plaintiff subsequently moved for a default judgment on October 18, 2022. (Clerk's Entry of Default, ECF No. 8; Mot. for Default J., ECF No. 12.) For the reasons set forth below, this Court recommends that Plaintiff's Motion for Default Judgment be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As alleged in the complaint, Plaintiff "specializes in licensing and distributing premier sporting events" and is "the exclusive domestic distributor for . . . the *Ultimate Fighting Championship®*," a mixed martial arts promotion company. (Compl., ECF No. 1, ¶ 7; *see id.* ¶ 1.) Relevant here, "Plaintiff held the exclusive commercial licensing rights to the broadcast of *Ultimate Fighting Championship® 235: Jon Jones v. Anthony Smith*, including all undercard bouts and commentary, telecast nationwide on March 2, 2019 (the 'Program')." (*Id.* ¶ 1.) Plaintiff licensed the Program to various commercial

establishments in New York for a fee, and the Program was then "broadcast . . . via satellite uplink" and "subsequently re-transmitted interstate to cable systems and satellite television companies." (*Id.* ¶¶ 8–9.)

As also alleged, Defendant "was an officer, director, shareholder, member and/or principal" of Triangle Eatery & Bar, LLC ("Triangle Eatery") on the date of the broadcast. (*Id.* ¶¶ 2–3.) Triangle Eatery, in turn, "operates, maintains[,] and controls [an] establishment known as M.I.A. Made in Astoria" ("M.I.A."), located in Astoria, New York. (*Id.* ¶2.) Plaintiff alleges that Defendant "had a right and ability to supervise," and "had an obvious and direct financial interest in[,] the activities of" M.I.A. on the date of the alleged FCA violations. (*Id.* ¶ 3.)

Plaintiff further alleges that, "[b]y unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system, Defendants willfully intercepted or received the interstate communication of the Program or assisted in such actions."[1] (*Id.* ¶ 11.) "Defendants then unlawfully transmitted, divulged and published said communication, or assisted in unlawfully transmitting, divulging and publishing said communications to patrons in the Establishment." (*Id.*) Plaintiff also alleges that "Defendants' actions were committed willfully and with the purpose and intent to secure a commercial advantage and private financial gain." (*Id.* ¶ 13.)

Plaintiff filed suit on March 2, 2022, originally against both Defendant Manetta and Triangle Eatery. (*See generally id.*) A few months later, on June 7, 2022, Plaintiff filed

---

[1] Other than some preliminaries as to Defendant Manetta's relationship to, supervision of, and financial interest in Triangle Eatery, all of Plaintiff's allegations set forth actions purportedly taken collectively by "Defendants," i.e., Manetta and Triangle Eatery. (*See* Compl., ECF No. 1, ¶¶ 3, 10–18.) As explained below, Plaintiff initially filed suit against both Manetta and Triangle Eatery, but later filed a notice of voluntary dismissal as to the latter. (*See* Notice of Voluntary Dismissal, ECF No. 10.) Accordingly, Manetta remains the sole Defendant in this action.

2

proof of service as to Defendant Manetta. (*See* Aff. of Service, ECF No. 5.) The affidavit of service indicates that a copy of the summons and complaint were delivered to "James Randall, a person of suitable age and discretion" at "6054 69th Pl #2, Maspeth, NY 11378," Defendant's last known place of residence, on May 31, 2022. (*Id.*) Plaintiff also filed an affidavit of service as to Triangle Eatery, indicating that service was effected in the same manner as that used for Defendant Manetta. (*See* Aff. of Service, ECF No. 6.)

After neither Defendant responded to the complaint, Plaintiff requested a certificate of default on July 14, 2022. (Req. for Certificate of Default, ECF No. 7.) A week later, on July 21, 2022, the Clerk of Court issued a certificate of default, but only as to Defendant Manetta; Plaintiff's request was denied as to Triangle Eatery due to deficiencies in the manner of service. (Clerk's Entry of Default, ECF No. 8; July 21, 2022 Clerk of Court's Entry.) Plaintiff subsequently filed a notice of voluntary dismissal as to Triangle Eatery on September 13, 2022, then moved for a default judgment against Defendant Manetta on October 18, 2022.[2] (*See* Notice of Voluntary Dismissal, ECF No. 10; Mot. for Default J., ECF No. 12; Mem. in Supp. of Mot. for Default J. ("Supp. Mem."), ECF No. 12-1.) The Honorable Ann M. Donnelly then referred Plaintiff's motion to the undersigned magistrate judge for a report and recommendation.[3] (Oct. 19, 2022 ECF Referral Order.)

---

[2] Plaintiff originally filed its motion for default judgment on September 22, 2022. (*See* Mot. for Default J., ECF No. 11.) Plaintiff's motion was denied, however, by the Honorable Ann M. Donnelly, for noncompliance with the Servicemembers Civil Relief Act. (*See* Sept. 29, 2022 Order.) Plaintiff renewed its motion for default judgment on October 18, 2022. (*See* Mot. for Default J., ECF No. 12.)

[3] Following referral of Plaintiff's motion, the Court directed Plaintiff to file proof of service of both the certificate of default and motion papers on Defendant as required by E.D.N.Y. Local Civil Rule 55.2(c). (*See* Oct. 19, 2022 ECF Order.) Plaintiff subsequently filed a certificate of service indicating that all documents required to be mailed under Rule 55.2(c) were sent to Defendant on October 18, 2022. (*See* Certificate of Service, ECF No. 13.)

On October 26, 2022, the Court issued an order scheduling a motion hearing and directing the Clerk of Court to mail notices of the hearing to the address listed on Plaintiff's affidavits of service. (Oct. 26, 2022 ECF Scheduling Order.) The hearing took place on December 5, 2022, at which Defendant failed to appear. (*See* Dec. 5, 2022 ECF Minute Entry and Order.) During the hearing, the Court raised concerns regarding the sufficiency of service, "including whether the record establishe[d] Defendant Manetta's connection to the service/residential address." (*Id.*) Consequently, on December 12, 2022, Plaintiff filed a supplemental brief addressing the adequacy of service, along with supporting affidavits, results from public records searches, and photographs taken by Plaintiff's process server on the date of service. (*See* Supplemental Mem., ECF No. 15; Decl. of Ryan Janis, ECF No. 15-1; TransUnion People Search for Pietro Manetta, ECF No. 15-2; TransUnion People Search for James Rundle, ECF No. 15-3; May 31, 2022 Photographs, ECF No. 15-5.)

## DISCUSSION

### I. Legal Standards for Default Judgment

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual

4

circumstances of a given case and to evaluate the credibility and good faith of the parties."[4] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

## II. Entry of Default

In determining whether entry of a default judgment is warranted, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake

---

[4] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having reviewed the filings in this case, the Court finds that Plaintiff's motion papers comport with these rules. Specifically, Plaintiff (1) requested a certificate of default in accordance with Local Rule 55.1(a) (*see* Req. for Certificate of Default, ECF No. 7); (2) demonstrated that Defendant has failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b) (*see* Decl. of Jon D. Jekielek, ECF No. 12-6); and (3) certified the mailing of the motion papers to Defendant's last known residence, in accordance with Local Rule 55.2(c). (*See* Certificate of Service, ECF No. 13.)

5

made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, although some of the *Enron Oil* factors weigh in Plaintiff's favor,[5] the Court finds that entry of a default judgment is not appropriate here because, as explained below, Plaintiff's allegations fail to establish a claim under § 605 of the FCA — the only basis of liability that Plaintiff presses in its motion for default judgment.

Whether Plaintiff has adequately established its asserted claim goes to the second *Enron Oil* factor, "whether [the] defendant has a meritorious defense." *Mason Tenders*, 2003 WL 1960584, at *2. "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. v. Eagle Ins.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Where, as here, the defendant has failed to respond to the complaint, court are often "unable to make a determination [of] whether the defendant has a meritorious defense," and, as a result,

---

[5] The Court weighs the willfulness and prejudice factors in favor of default judgment. Despite the Court's initial concerns regarding service of process, the Court finds that Plaintiff adequately served Defendant by leaving a copy of the summons and complaint with "James Randall, a person of suitable age and discretion." (Aff. of Service, ECF No. 5; Morant Decl., ECF No. 15-5, ¶ 1; *see* Exs. A & B to Supplemental Mem., ECF Nos. 15-2, 15-3 (public records search results showing that (1) Defendant was served at his place of residence on May 31, 2022, and (2) Mr. Randall also resided at the same address on that date).) *See* Fed. R. Civ. P. 4(e)(2)(b). Defendant failed to respond to the complaint within 21 days of service, and likewise failed to respond to Plaintiff's motion for default judgment, even after receiving notice both from Plaintiff and the Court. (*See* Clerk's Entry of Default, ECF No. 8; ECF Certificate of Service, ECF No. 13; Oct. 26, 2022 ECF Order; Notice to Def., ECF No. 14.) In light of Defendant's failure to respond, the Court weighs the willfulness factor in favor of default. As to prejudice, the Court finds that "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response from Defendant[]." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003). Accordingly, this factor also weighs in favor of default.

"this factor weighs in [the plaintiff's] favor." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013).

Weighing the meritorious defense factor in favor of default presumes, however, that the plaintiff has "demonstrate[d] that the allegations set forth in the complaint state valid claims." *United States v. McDermott*, No. 12-CV-4440 (DRH) (AKT), 2014 WL 1272566, at *4 (E.D.N.Y. Feb. 14, 2014), *report and recommendation adopted*, 2014 WL 917267 (E.D.N.Y. Mar. 10, 2014). This is because "a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Said v. SBS Elecs., Inc.*, No. 08-CV-3067 (RJD) (JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as modified*, 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2020); *see Frank Brunkhorst Co. v. Castellini*, No. 17-CV-2324 (AMD) (ST), 2018 WL 1377302, at *2 (E.D.N.Y. Mar. 19, 2018) (explaining that a party moving for default judgment must establish that "on the law it is entitled to the relief it seeks, given the facts as established by the default" (quotation marks omitted)). The Court cannot weigh this factor in Plaintiff's favor if the allegations of the complaint are insufficient to plead Defendant's liability in the first place.

Plaintiff argues that the allegations of the complaint establish Defendant's liability under § 605 of the FCA, whether based on his own actions or under a theory of vicarious liability.[6] (*See* Supp. Mem., ECF No. 12-1, at 13–14.) Even taking Plaintiff's

---

[6] Plaintiff does not argue that it is entitled to default judgment with respect to its alternative claim under § 553. (*See* Supp. Mem., ECF No. 12-1, at 13–14 (arguing exclusively that Defendant is liable under § 605); *see generally id.*) The Court therefore does not address whether the allegations of the complaint establish Defendant's liability under § 553. *See Frank Brunkhorst Co. v. Castellini*, No. 17-CV-2324 (AMD) (ST), 2018 WL 1377302, at *2 (E.D.N.Y. Mar. 19, 2018) ("The plaintiff's motion for default judgment did not address the defendant's liability; there was no discussion of the elements of the claims asserted or the legal sufficiency of the alleged facts

7

factual assertions as true, Plaintiff's allegations fail to establish Defendant's liability under either theory.

### A. The FCA

Section 605 of the FCA "bars a number of acts." *J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186 (AMD) (SJB), 2018 WL 2709222, at *3 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200 (E.D.N.Y. June 5, 2018). Subsection 605(a), the provision at issue here, provides as follows:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority.
>
> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.
>
> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
>
> No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

---

in the complaint. It was not [the court's] responsibility to make the plaintiff's arguments, especially since the plaintiff is represented by counsel.").

47 U.S.C. § 605(a) (spaces added). Generally speaking, subsection 605(a) "'prohibits the unauthorized use or publication of . . . radio communications,'" which "has long been understood to include satellite transmissions." *Nacipucha*, 2018 WL 2709222, at *3 (quoting *Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1007 (2d Cir. 1993)). Each sentence of § 605(a) provides a separate basis for liability and is therefore "analyzed separately."[7] *Nacipucha*, 2018 WL 2709222, at *3.

Courts in this circuit have also endorsed "the alternative theories of vicarious liability and contributory liability, each drawn from the copyright context, that allow for individual corporate officers to be held liable for their companies' FCA violations." *J & J Sports Prods., Inc. v. Ahuachapan Corp.*, 422 F. Supp. 3d 652, 658 (E.D.N.Y. 2019). "Contributory liability applies where the officer himself 'authorized the infringing use.'" *Id.* (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). Vicarious liability, in turn, "can be established where a corporate officer had (1) a 'right and ability to supervise' the company's activities and (2) 'an obvious and direct financial interest in the exploitation'" of the communication at issue. *Id.* at 659 (quoting *Softel*, 118 F.3d at 971).

### B. Direct Liability

Plaintiff asserts that the unrebutted allegations of the complaint establish that Defendant "is directly liable" under Section 605. (Supp. Mem., ECF No. 12-1, at 13.) Specifically, Plaintiff points to its allegation that Defendant "approved, directly participated in, and/or assisted in [M.I.A.'s] unauthorized exhibition of the Program." (Compl., ECF No. 1, ¶ 3; Supp. Mem., ECF No. 12-1, at 13.) Accordingly, in Plaintiff's

---

[7] "Although [it] reads like a criminal statute," subsection 605(e)(4) likewise provides a right of action, targeted at "upstream manufacturers and distributors" of prohibited equipment. *Nacipucha*, 2018 WL 2709222, at *7; *see* 47 U.S.C. § 605(e)(4).

view, by failing to defend this action, Defendant has "admitted [that] he personally approved and directly participated in the unauthorized receipt and exhibition," rendering him liable under § 605. (Supp. Mem., ECF No. 12-1, at 13.)

As a preliminary matter, the Court notes that the complaint is unspecific as to which provision of § 605 Defendant is alleged to have violated.[8] (*See generally* Compl., ECF No. 1.) That said, given how Plaintiff characterizes Defendant's violation in the motion for default judgment, i.e., that Defendant "approved and directly participated in the unauthorized receipt and exhibition of the [Program]," the Court evaluates Plaintiff's claim under the closest corollary: sentence three of § 605(a). (Supp. Mem., ECF No. 12-1, at 13.)

Plaintiff does not argue, for instance, that it has alleged a claim against "communications personnel," whose conduct is regulated by sentence one. *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 468–69 (E.D.N.Y. 2012). Similarly, Plaintiff does not argue that its allegations show that Defendant intercepted the Program, which is required under sentence two, or that Defendant at least knew the Program had been intercepted, which is required under sentence four. *See Nacipucha*, 2018 WL 2709222, at *4; *see also Premium Sports Inc. v. Connell*, No. 10-CV-3753 (KBF), 2012 WL 691891, at *2 (S.D.N.Y. Mar. 1, 2012) ("[T]he term intercept or interception means to stop, seize, or interrupt prior to arrival; or taking or seizing before arrival at the destined place." (quotation marks omitted)). Conversely, sentence three has no interception requirement. *Nacipucha,* 2018 WL 2709222, at *4. It provides that "[n]o person not being entitled thereto shall *receive* or assist in *receiving* any interstate or

---

[8] This alone may be reason to deny Plaintiff's motion. *See Castellini*, 2018 WL 1377302, at *2.

10

foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a) (emphasis added). Given Plaintiff's assertion that Defendant is liable based on its allegations that Defendant "'approved and directly participated in the unauthorized *receipt* and exhibition'" of the Program, the Court construes Plaintiff's allegations as setting forth a claim under sentence three. (Supp. Mem., ECF No. 12-1, at 13 (emphasis added) (quoting Compl., ECF No. 1, ¶ 3).)

To plead a cause of action under sentence three, Plaintiff must have set forth "factual allegations, accepted as true, show[ing] that [Defendant] 'received' [the] satellite-originated signal" — or assisted in receiving it — "without authorization and for financial gain." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2019 WL 8955234, at *11 (S.D.N.Y. Oct. 25, 2019), *report and recommendation adopted*, 2020 WL 1467098 (S.D.N.Y. Mar. 26, 2020) (citing *Dish Network*, 893 F. Supp. 2d at 473); *see also Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996) (discussing the legislature's intent that section 605(a) apply to "[t]hose who 'assist' . . . in receiving" radio communications without authorization (quotation marks omitted)). Plaintiff's allegations fall short of establishing such a claim. To be sure, the complaint alleges that the Program was "received" without authorization, whether by Defendant himself or with his assistance. (Compl., ECF No. 1, ¶ 11; *see also id.* ¶ 3.) Plaintiff also alleges facts showing that the Program originated by satellite transmission, in other words, that it qualifies as a "radio communication" under § 605(a). (*Id.* ¶ 8.) *See Nacipucha*, 2018 WL 2709222, at *4–5.

However, the complaint fails to allege any facts showing that Defendant derived financial gain from the unauthorized receipt. (*See* Compl., ECF No. 1.) *See Infomir*, 2019 WL 8955234, at *11; *see also* 47 U.S.C. § 605(a) (providing for liability when a person

11

receives or assists in illegally receiving a covered communication "*and* use[s] such communication . . . for his own benefit or for the benefit of another" (emphasis added)). At most, Plaintiff alleges that Defendant "divulged and published" the Program to M.I.A.'s patrons, "*with the purpose and intent* to secure a commercial advantage and private financial gain." (Compl., ECF No. 1, ¶¶ 11, 13 (emphasis added).) Whether Defendant *intended* to derive financial gain from the unauthorized showing of the Program is irrelevant. *See Joint Stock Co. "Channel One Russ. WorldWide" v. Russian TV Co.*, No. 18-CV-2318 (LGS), 2021 WL 4341053, at *4 (S.D.N.Y. Sept. 22, 2021) (explaining that a § 605 "violation results in liability regardless of the intent of the violator"); *cf. Nacipucha*, 2018 WL 2709222, at *4 (observing that sentence three of § 605(a) does not require "a knowing violation"). Rather, to have adequately pleaded liability under sentence three, Plaintiff must have alleged "sufficient factual matter" from which the Court could reasonably infer that Defendant used the Program for financial gain. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Infomir*, 2019 WL 8955234, at *11.

Compare, for instance, the allegations at issue in *Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, which the court found sufficient to establish liability in the default context. 2019 WL 8955234; *see id.* at *12 (concluding that "the well-pleaded allegations in the [complaint] state a claim under the third sentence of § 605(a)"). In *Infomir*, the plaintiffs alleged that the defendants not only received the satellite transmission at issue, but that the defendants also re-transmitted it "to paying customers in New York and elsewhere." *Id.* at *9; *cf. J & J Sports Prods., Inc. v. Nest Rest. & Bar Inc.*, No. 17-CV-2194 (RJD) (VMS), 2018 WL 4921657, at *6 (E.D.N.Y. July 17, 2018), *report and recommendation adopted,* 2018 WL 4356724 (E.D.N.Y. Sept. 12, 2018) (contemplating more thorough allegations of a defendant's financial gain from an

12

alleged violation, "such as . . . receiving a cover charge, selling more food or drink than on a non-Event night, or having an exceptional attendance for the evening").

In contrast, here, the complaint is devoid of such allegations. While true that Plaintiff has alleged that Defendant exhibited the Program to M.I.A.'s patrons, such facts are, at most, "'merely consistent with'" an alleged violation of sentence three. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Without more, the complaint "'stops short of the line between possibility and plausibility,'" and the Court is unable to conclude that Plaintiff has established Defendant's liability for the purposes of default judgment. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see Ahuachapan Corp.*, 422 F. Supp. 3d at 663 (explaining that a plaintiff fails to establish a defendant's liability where, "[i]nstead of asserting well-pleaded facts showing [the defendant's] liability, the [c]omplaint merely makes conclusory assertions").

## C. Vicarious Liability

Plaintiff alternatively contends that Defendant may be held "vicariously liable for [any] underlying" violations committed by Triangle Eatery. (Supp. Mem., ECF No. 12-1, at 13–14.) Plaintiff does not, however, identify what those underlying violations are, and, given the scope of conduct prohibited by § 605 and its several provisions, as discussed above, the Court is not inclined to guess. *See Jones v. Dep't of Hous. Pres. & Dev.*, No. 06-CV-2085 (LAP), 2007 WL 582751, at *2 (S.D.N.Y. Feb. 22, 2007) ("[V]icarious liability cannot exist without direct liability.").

Moreover, the Court questions whether it is even possible to establish an individual defendant's vicarious liability for a § 605 violation where the corporate defendant that allegedly committed an underlying violation is not a named defendant. *See, e.g., J & J Sports Prods., Inc. v. Abdelraouf*, No. 18-CV-2547 (ARR) (VMS), 2019 WL 457719, at *5 (E.D.N.Y. Feb. 5, 2019); *Nacipucha*, 2018 WL 2709222, at *6. Because Plaintiff

13

voluntarily dismissed its claims against Triangle Eatery, Plaintiff's vicarious liability theory may be precluded on this basis alone. (*See* Notice of Dismissal, ECF No. 10.)

Regardless, as explained above, Plaintiff has failed to allege facts showing either a "direct financial gain," or "strong indirect evidence of financial gain," from any underlying violation. *Ahuachapan Corp.*, 422 F. Supp. 3d at 659. Absent such allegations, the complaint fails on "the second prong of vicarious liability."[9] *Id.* In summary, the allegations of the complaint, taken as true, fail to establish Defendant's liability under § 605. Accordingly, despite Defendant's failure to defend in this action, the Court finds that entry of a default judgment is inappropriate at this juncture and that Plaintiff's motion should therefore be denied.

---

[9] Plaintiff asserts that Defendant had "a direct financial benefit from the infringing activities" based on the fact that Defendant's name appears on Triangle Eatery's liquor license. (Supp. Mem., ECF No. 12-1, at 14; *see* Liquor License, ECF No. 12-9.) However, Plaintiff did not allege as much in the complaint (or append it thereto) and merely submitted the liquor license in support of its motion for default judgment. (*See* Compl., ECF No. 1.) Such documents "cannot be used to remedy [pleading] defects" in the complaint. *J & J Sports Prods., Inc. v. RK Soto Enters. Inc.*, No. 17-CV-2636, 2020 WL 7684894, at *12 (E.D.N.Y. Feb. 7, 2020), *report and recommendation adopted*, 2020 WL 7041089 (E.D.N.Y. Dec. 1, 2020). Further, "courts in this jurisdiction have held repeatedly that the mere presence of an individual defendant's name on a liquor license is insufficient to establish" vicarious liability. *J & J Sports Prods., Inc. v. 88-18 Tropical Rest. Corp.*, No. 17-CV-2620 (DLI) (RER), 2018 WL 1701942, at *3 (E.D.N.Y. Mar. 30, 2018).

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's has failed to demonstrate Defendant's liability on the grounds requested in its motion for default judgment. The Court therefore respectfully recommends denying Plaintiff's motion.

\* \* \* \* \*

This report and recommendation will be filed electronically and a copy sent by mail to Defendant Pietro Manetta. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendant forthwith and to file proof of same by June 28, 2023. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Ann M. Donnelly at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated: Brooklyn, New York
June 23, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

15